*256 Opinion of the Court by
Judge Owsley.
John Bailey and Mary his wife, formerly Mary Duncan, claiming in right of the latter, an interest on the personal estate, slaves and land of Isaac Duncan Sen. dec’d. exhibited their bill in chancery against Margaret Duncan, the executrix of the last will &c. of the said Isaac dec’d. and the surviving *257 brothers and sisters of Mrs; Daily., for the purpose? of obtaining an account of the personal estate, hire of slaves, rents and profits of the land, and partition of the slaves and land.
Questions stated.
Words of inheritance never were required to pass the entire estate in slaves or other chattles, by either sale, gift or bequest.
*257 After several amended hills, cross bills and an? swers, (the particular import of which, need not novii be mentioned,) were filed, the cause came on to be;, beard, and the decree to which this writ of error is prosecuted, was pronounced.
The questions made by the pleadings, and involved in the assignment of errors, may with propriety he said to embrace the following points:
1st. As to the interest to which Baily and his wife, in right of his wife, are entitled in the slave Martha, which belonged to her father, Isaac Duncan Sen. at the time of his death, and the issue of that slave.;
2nd. The interest to which they are entitled, in the persona! estate of the said Isaac, as one of bis heirs and distributees, and also as one of the heirs and distributees of her brothers, Wm. Ireland Duncan, James Duncan, and Nancy Duncan, all of whom departed this life after their father, Isaac Duncan Sen. whilst they were infants, unmarried and without issue.
3rd. Their interest in the rents and profits of the land, and the land itself, claimed by .them, in right of Mrs. Baily, as heir to her father, and also as heir to her deceased brothers and sister.
4th. As to the right of dower in the land claimed by Margaret Duncan, the widow of Isaac Duncan Sen. and which was decreed to her by the court below.
With respect to the first point it is perfectly clear that Baily and his wife, have no interest in either the slave Martha, or her increase. The increase have all been born since the death of Mrs, Baily’s father, Isaac Duncan, by whose last will, the slave Martha was given to his wife, Margaret Duncan. There is contained in the bequest of the slave to Margaret Duncan, no such words, as by the com *258 mon law were necessary in grants, to pass an estate of inheritance in land, but words of that sort were never required, to pass the absolute right in slaves or personal chattels, and there is no expression in the bequest to Margaret, or in any other provision contained in the will, indicating in the slightest degree, an intention in the testator, not to give to Margaret the absolute right to the slave. The words of the bequest are: “Í give unto my beloved wife, Margaret, item, one negro girl named Margaret ” These expressions plainly and naturally imply an absolute gift of the slave, and it is a subject of no slight surprise, that it should ever have been supposed by any one, that a less interest passed to the wife of the testator.
Found that Baily’s wife had received her distributive portion before the marriage.
Executor is accountable for the portion of a distributee dying without issue, to his executor, and not to the surviving distributees.
Facts in relation to the claim for partition of the land.
As to the second point, it is equally clear, that Baily and his wife are entitled to no relief in the present contest. As to so much of the persona! estate as is claimed in right of Mrs. Baily as one of the heirs and distributees of her father base Duncan deceased, the evidence is clear that, the amount thereof was paid to her, before her marriage with Baily, by Margaret Duncan.
And as respects the interest claimed by Baily and his wife, on account of her being one of the heirs of her deceased brothers and sister, if is perfectly clear that the executrix, Margaret Duncan, cannot be made to account in this suit to them If there were any thing coming from the executrix, to the deceased children, at the time of their death, she is bound to account for it to their personal representatives; and though part of their distributees. Baily and his wife, in their character of distributees, have no right to demand an account; as was holden in the case of Coons &c. against Nall’s heirs, 4 Littell R. 268.
Prelimary to a decision on the third point it is proper that we should give a brief statement of the facts upon which the claim of Daily and his wife, in relation to the land depends. It appears that their ancestor, Isaac Duncan dec’ll in his lifetime, in consideration of ten pounds in hand paid, pur *259 chased about ninety acres of land, received the possession thereof, made small improvements thereon, and continued to reside upon the land, until the time of his death. The title was not made to Isaac Duncan in his life time, nor does it appear that any ligation for a title was given to him by the person from whom he purchased; but after his death the title was conveyed to the husbands of his married daughters, and his other children jointly, in consideration of his purchase, so that as between the present parties, Baily must he estoped, to deny that Isaac Duncan was possessed of the equitable right to the land, at the time of his death. It also appears that since the death of Isaac Duncan, the father, three of his children, to wit: Win. I. Duncan, James Duncan and Nancy Duncan, departed this life, whilst they were infants, under the age of twenty-one years, and without issue.
Estopal.
Touching the claims in the land of Baily and wife, by descent to her from her brothers and sisters.
Claim of the widow Duncan, by devise from the purchasers from Baily, to the interest claimed by him.
Without, therefore, stoping to enquire whether or not the interest in the land which was held by Isaac Duncan, the father, at his death, descended upon his children by operation of law, or passed have his will, it is perfectly clear from the preceding facts, that Baily and his wife, must have become entiled to a part of the land. By the deed of conveyance which was executed to him and others, Baily in conjunction with the other vendees, became invested with a joint interest- in the land; and upon the death of Win. I., James and Nancy Duncan, the interest held by them, under the deed of conveyance, descended upon the surviving brothers and sisters, of whom Mrs. Baily is one.
That Baily and his wife were entitled to this interest, is conceded by the defendants, but Mrs. Duncan, the widow and executrix of Isaac Duncan the ancestor alleges, that since the death of two of the infant, children, Baily, for a valuable consideration received, sold and gave, his obligation to convey all the interest which he and his wife then held in the land, to another of the children, Isaac Duncan jr. who, she charges, has since by his last will and testament, devised the interest, so purchased of Baily, to her, during her natural life, and the remainder *260 to one of bis sisters; and she insists upon the sale so made, as precluding Baily and his wife from recovering any part of the land to which they were then entitled.
Baily’s allegations of fraud against his sale, and prayer for a rescission.
Sale decided to be fair.
Husband may sell the usufructuary estate, in the wife’s hands, but not the fee, without her concurrence.
Where one co-tenant sells all his present estate in lands and afterwards the intesest of another descends on him, he shall held it.
Baily acknowledges that he made the sale and gave his obligation to convey, but charges that he teas induced to do so, In the false and fraudulent representations of Mrs. Duncan, the widow, and Isaac Duncan jr. to whom his obligation was given, and after setting out the representations which he charges to he fraudulent, he insists upon the contract of sale being set aside, and a, decree for the land.
But without going into a more particular detail of the facts, upon this branch of the case, it is sufficient to remark that the evidence, is totally insufficient to establish the fraud charged, and of course Baily cannot be entitled to a decree for any part of the land to which he and his wife were entitled at the time of the sale.
As respects the inheritance of the wife, we know the husband could not without her conncurrence convey an estate in fee; but he possessed the power to sell the usufructuary interest, to which as husband he was entitled during the coverture of his wife, or the interest to which he may have been entitled as tenant by the curtesy, so that whatever may be the right of the wife or her representatives after the death of Baily, it is evident that neither Baily nor bis wife have any right in equity, during his life, to claim any part of the interest sold to Isaac Duncan jr.
The only interest, therefore, to which Baily and his wife have shown themselves entitled, and to which they have a just claim for relief, is that which b) operation of law, was cast upon Mrs. Baily, as one of the heirs of her sister Nancy,, who died after the sale by Baily to Isaac, Duncan jr. and that -interest the court below decreed he should have.
But the court at the same time, decreed that Mrs. Duncan, the widow of Isaac Duncansen was en *261 titled to dower, in the part decreed to Baily and his wife; and hence we are brought to the fourty point, which involves an inquiry into the right of Mrs. Duncan to dower in Hie land.
Is the widow entitled to lands of which her husband dies possessed, not having the legal title, but a right in equity to it?—
—Not at common law.
Cases of dower claimed on common law, in trusts and uses.
We have already seen that Isaac Duncan, the husband, resided upon the land at the rime of his decease, and that as respects the present contest, it is not competent for Baily and his- wife, who claim under Ins purchase, to contest the goodness of his equity, so that in deciding upon the. widow’s right to dower, the question arises whether or not a wife is entitled to dower in land, of which her husband dies possessed, though without hating the legal title, but to which at the time of his death, he is equitably entitled to conveyance of the legal title from another?
Were this question to be decided upon common law principles, the answer would undoubtedly be in the negative. As early as Vernon’s case. 4. Co. R. 1, it was held that a wife was not dowable of a use before the statute of uses; and since the statutes, uses or trusts not executed by the statute have been repeatedly held not to give the wife a greater interest than uses at common law.
in the case of Bottomley against Lord Fairfax, Prec. Ch. 386, the court say, “that if a husband before marriage conveys his estate to trustees and their heirs, in such a manner as to put the legal estate out of him, though the trust be limited to him and his heirs, that of this trust estate, the wife, after his death, shall not he endowed, and that this court hath never yet gone so far as to allow her dower in such a case.”
In the case of Chaplin against Chaplin, 3 Peerc. Wm. R. the chancellor says, “that as at common law, an use was the same as a trust is now, it follows, that the wife can no more be endowed of a trust now, than at common law, and before the statute, she could be endowed of an use.”
And in the case of Godwin against Winsmore, 2 Atkins 526, Lord Hardwick, observes, that “it is an *262 established doctrine now that a wife is not dowable of a trust estate: indeed,” says he. “a distinction is taken by Sir Joseph Jekyll, in Banks against Sutton, 2 P. W. 708, 709. in regard to a trust, where it. descends or comes to the husband from another, and is not floated by himself; but I think there is no ground for such a distinction, for it is going on suppositions which hold on both sides.”
Statute of Virginia and Kentucky, a to dower and curtesy.
Widow is entitled to cover in lands of which another is seized to the use of, or in trust for the husband, which results from, or is declared by deed by the statute.
Thus stood the doctrine of the law upon the subject of estates in trust, until the passage of an act by the legislature of Virginia before the separation, and which has since, been re enacted by the Legislature. oi this state, and is contained in 1 Dig. L. K. 315.
The act provides that, “where any person to whose use, or in trust for whose, benefit, another is, or shall be seized of lands, tenements of hereditaments, hath or shall lone such inheritance in the use or trust, as if it had been a legal right, the husband or wife of such person would thereof have been entitled to curtesy or dower, such husband or wife shall have and'hold, and may by the remedy proper in similar cases, recover curtesy or dower of such lands, tenements or hereditaments.”
With respect to uses and trusts embraced by the provisions of this act, the doctrine of the common law has undoubtedly undergone a change, and although formerly a wife was not dowable of such a use or trust, she may now by the remedy proper in such a case, recover dower of the lunch to which others are seized to the use, or in trust for the benefit of the husband. In deciding upon the question under consideration, therefore, the main and only enquiry for the court, is to ascertain whether or not was intended by the makers of the act, to authorize a wife to recover dower in lands, to which the husband had at his death, an indisputable right, in equity to a conveyance of the fee simple estate, though the right be devised under an executory contract. for the title, and not resulting from an use or trust, expressly declared by deed. With respect to trusts of the latter sort, the provisions of the act *263 are too explicit, in favor of the wife’s right, to admit of a difference of opinion; and if we advert, as we should do, to the old law as it stood at the passage, of the act, the mischief which must have actuated the Legislature in making the Change, and the remedy which the act has provided, we apprehend, but little doubt will be entertained as to the propriety of giving such a construction to the act, as will 'embrace ail trusts, whether expressly declared by deed or resulting from executory contracts, by construction of courts of equity. The interest of the cestique trust is precisely the same, let the trust be cheated in the one way or the other, the justice of the wife’s claim is as strong in one case as the other; and as she was not dowable in a trust of either sort, before the enactment of the statute, the mischief to be remedied by the act, emphatically demands that the wife should be endowed of trust estates of both sorts.
It was held in Virginia the widow was entitled to dower, where the husband had an equity, in an estate in fee, which would authorize the chancellor to decree the legal title—
and so is the law here.
We have been unable to find any case, either in this country or Virginia, where dower has been decreed to the wife, in an equitable'estate in fee, to which the husband became entitled by contract, for a conveyance of the land; but the right of the wife to dower in such a case came before the appellate court of the State of Virginia, in the case of Rawton against Rawton, 1 H. M R. 9, and although a majority of the court decided against the claim of dower in that case, two out of the five Judges com posing the court, were expressly in favor of the claim for dower; and the decision of the others went not upon the idea of dower not being allowable in an equitable estate, but upon the principle that Use, equitable estate, of which dower was claimed, was not made out by the testimony in the cause. And in the case of Claibourn against Claibourn, which afterwards came before the same court. Judge Roane who was one of the judges that decided against the widow’s claim of dower in the former case, in remarking upon that case, after stating its circumstances, says, “the transaction having happened subsequent to the act of 178.5,” (the act of which the act of ibis country is a transcript,) “the widow cl aimed her dower only under the provision of tbs!: statute. Three of the judges overruled her claim; *264 but it was on the ground of no contract having been proved, as they thought, for more than a life estate, in favor of the husband: two other judges thought that the husband had an equitable estate in fee, and on that ground were in favor of the dower, under the act of 785.” In the course of his remarks he further says, “the counsel in opposition to the claim of dower, admitted that under the act of 1785, the widow was entitled to dower, provided it should appear that her husband had such an equity in a fee simple estate, as would authorize a court of equity to decree the legal estate ” Thus it seems to have been the concurrent opinion of the bar and the bench of the Supreme, court of Virginia, that since the act of 1785, of which ours is a copy, that a wife is dowable of any equity in a fee simple estate, belonging to the husband, if it will authorise a court of equity to decree the legal title.
Acceptance by the widow of a bequest of slaves does not of itself bar her of dower in the lands.
But admitting the equity held by the husband of Mrs. Duncan to be such as would have authorised her to recover dower in the load, we are brought to enquire whether or not, by accepting the provision made, her by the will of her husband, she has precluded herself from insisting upon her right of dower in this coatest* The will bears upon its face internal evidence of its having been drawn by an inexperienced and unskilful hand, and though not entirely free from doubt, we are inclined to the opinion, that it was designed by the testator to dispose of all his estate of every description. After making provision for the payment of his debts, the testator makes a specific bequest to his wife, of his slave Martha, and then, after making some small bequests, directs all the balance of his estate, to be equally divided between the rest of his children, not before named.
Though accepted by her, the bequest of the slave to Mrs. Duncan, most clearly, cannot be denominated a legal jointure, pleadable at law, in bar of her right of dower in the lands of her husband. Several reasons might be assigned, why it is not so j one only need be mentioned. The bequest is of a slave, and the statute of this country is understood *265 not to allow the creation of a jointure by a bequest of that sort of property. See 1 D.g. 466. 2 Dig 1246. The latter of these acts after fixing the time a providing ¡he mode, in which widows are to re-nounce the provisions which may be made them, the wills of their deceased husbands, declares that upon such widows having made such a renunciation she •“shall be entitled to one third part of the slaves whereof her husband died possessed, which she shall hold during her life, and at her death they and their increase shall go to such person or persons to whom they would have passed and gone, if such declaration had not been made; and such shall, moreover, he entitled to such share of his other personal estate, as if lie had died intestate, to hold to her a? her absolute property; but every widow riot making a declaration, within the time aforesaid, -hall have no more of tier husband’s slaves and personal estate, than is given her by his will. And the former act after providing for the conveyance of estate by deed or will, either expressly or by averment, for the jointure of the wife, in lieu of tier dower, and after pointing out the nature and quality of estate to be conveyed, declares that such estate shall bar her dower of the residue of the lands, tenements and hereditaments, &c.” These two acts in connexion, satisfactorily show that to be a legal bar of dower of lands, the estate, conveyed, in lien of dower, must not he slaves only.
If the bequests to the widow are intended to be in lieu of dower, she shall elect, and not take both as doweress and under the will.
But conceding that the bequest does not constitute a legal bar of dower is Mrs. Duncan to be permitted to held the land which is devised by her husband to his children?
This question turns upon the construction of the in which the widow has been put to her election, either to take her dower and relinquish the provision made for her in the will, or take that provison and relinquish her dower. There are other cases in which she has been permitted to hold both. The principle upon which these cases going that a person is not permitted to hold under and against a *266 will; so that in every such case the main enquiry is whether it was intended by the testator, in making the provision for his widow, that it should be in lieu of. or in addition to her dower. If it be intended in lien of dower, the widow is put to her election, if it be intended in addition to her dower, she is allowed to take the provision and claim her dower.
In England the intention must appear on the face of the will. In Virginia testimony dehors has been received.
Bequest of a slave to the widow, and disposition by the will of all the balance of the estate to others shall not be construed as intended to be in lieu of her dower in lands.
Formerly the intention was to be collected from the will itself; but the act of Virginia from which that of this country upon the subject of dower was taken, has been construed by the appellate court of Virginia, to authorize an averment that the provision in the will is made in lieu of dower, and to support that averment by matter dehors the will. 4 H. and M. 23.
But there is in this case, nothing extraneous from the. will, calculated to show the intention of the testator; and with the exception of this allowance to prove the intention of the testator by oilier testimony than may be collected from the will itself, the act is said not in any respect to vary the previous existing common law. 7 Cranch 377.
What then arc we, upon common law principles, to understand to have been the intention of the testator? Are we to infer that the bequest, of the slave to his wife, was intended by the testator to be in lieu of her dower in his lands, because in the after part of his will he has disposed of the residue of his estate to others?
We think not. In the case, of Lawrence, against Lawrence, 2 Vernon 363. it appearing that the testator by his will, gave a legacy to his wife, and devised to her part of his real estate, during her widowhood, and disposed of the residue of his estate to others, Lord Chancellor Summers refused, to decree dower to the wife, unless he would waive the devise; but the decree of the Lord Chancellor was reversed by Lord Keeper Wright, awd the reversal was afterwards i Phoned in the home of lords, and that alartnance has been repeatedly followed in other cases, 2 Atkins 427, note 227, Co. Lit. 36, b. *267 Since that affirmance, it is true, the English courts tinder particular and extraordinary circumstances, have in some eases construed a bequest to the wife, to have been intended by the testator to be in lieu of her dower without any express provision in the will, declaring such intention, and have put the wife to her election, either to take the bequest and relinquish her dower, or to take her dower and relinquish the bequest. But there are no extraordinary circumstances in this case to take it out of the influence of the decision of the house of lords in the case.of Lawrence against Lawrence. Hence we infer that the bequest to the widow should not be construed to have been intended by the testator to be in lieu of her dower in the land, and that it was consequently correct in the court below to sustain the claim of dower, without requiring the widow to relinquish the provision made to her by the will.
Triplett, for plaintiffs; Haggin, for defendants.
The decree must be affirmed, with cost.